UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA MARTIN, | ) | CASE NO:1:23CV1564 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| FEDERAL RESERVE BANK OF | ) | OPINION AND ORDER |
| CLEVELAND, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J**:

This matter is before the Court on Plaintiff Amanda Martin's ("Martin") Dispositive

Motion for Judgment on the Administrative Record (ECF # 33) and Defendants' Federal Reserve

Bank of Cleveland, Matrix Absence Management, Inc., and Long Term Disability Income Plan

for Employees of the Federal Reserve System ("Defendants") Motion for Summary Judgment on

the Administrative Record.  (ECF # 32).[1]  For the following reasons, the Court grants

Defendants' Motion and denies Plaintiff's.

## Background Facts

According to her Complaint, Martin is a participant of the Long-Term Disability Income

---

[1]  The Sixth Circuit has advised that summary judgment is not appropriate in cases adjudicated solely on the administrative record.  See *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir. 1998).  ("To apply Rule 56 after a full factual hearing has already occurred before an ERISA administrator is therefore pointless.").  Therefore, the Court will consider the pending motions as motions for judgment on the administrative record.

Plan for Employees of the Federal Reserve System (the "Plan") as a sponsored employee of Defendant Federal Reserve Bank of Cleveland. The Plan is administered by Defendant Matrix Absence Management, Inc. ("Matrix") and Matrix has complete authority to determine eligibility under the Plan. The Plan is a self-insured plan. To be eligible for Long Term Disability benefits a participant must provide adequate proof of a disability. The Plan defines "proof" as "[w]ritten documentation that evidences and supports a claim for LTD" and includes "an attending physician's statement ... attending Physician's office records or notes ... consulting Physician reports ... test results ... and any other form of objective medical evidence in support of a claim for benefits." The Plan states LTD benefits "shall cease" "the date that the Medical Board determines that the LTD Payee is no longer Totally Disabled." The LTD Plan's definition of "Total Disability" required Martin to be "unable solely because of illness or injury to work on a regular and full-time basis" at her "Own Occupation." Martin submitted documents to Matrix as the Plan Administrator, allegedly establishing that she is totally disabled but was denied on February 1, 2023. Martin subsequently appealed Defendants' denial of LTD benefits on April 10, 2023, and received a final LTD denial from Defendants on May 25, 2023. Martin alleges Matrix's denial was a violation of the plain language of the Plan. Martin alleges Breach of Contract and Bad Faith claims for the denial of coverage.

**Martin's Motion**

According to Martin, she worked for five years for the Federal Reserve Bank in Cleveland as a project director when in April 2020 she experienced persistent symptoms, including headaches, fatigue, brain fog, tinnitus and light sensitivity resulting from COVID-19 infections. Her symptoms gradually worsened until she could no longer perform the functions of

her job.  Ultimately, she ceased working on April 13, 2022.

Martin also points the Court to the opinion of Dr. April Sobieralski, a Licensed Clinical Psychologist, who diagnosed Martin with depression, anxiety and cognitive dysfunction that worsened following her COVID-19 infection.  Martin's mental health issues contributed to her inability to continue working.

After her initial application was denied, Martin provided additional medical opinions, including one from Curtis Riffle, D.C., who described Martin's physical limitations of fatigue, reduced stamina and cognitive function.  Riffle attributed a decline in her function to a second bout of COVID-19.

Curtis Dornan, MD, also submitted a declaration after Martin's initial denial wherein he described her progressively worsening condition after December 2021.  He opined that inflammation from her COVID-19 infections contributed to her worsening health condition.

Martin further cites to the medical opinion of  Dr. Deborah Reed, who authored an undated opinion that was included with Martin's initial Long Term Disability ("LTD") application.  Her opinion described Martin suffering near-daily migraines that were debilitating to the point where Martin could not complete routine household tasks.  Moreover, she had continuing difficulties with screen time, concentration and memory.

Martin argues that Defendant Matrix did not provide treating physician opinions to its three reviewing physicians.  After raising the issue with the Court, Defendants finally provided the missing documents only upon being compelled by the Court.  Matrix relied on three reviewing physicians, Drs. Glass, Sonnee and Endros to review Martin's medical records but they were not provided the complete record.  Martin asserts these recently produced documents

were not only procedurally important but were in fact integral to Martin's case.  The missing documents directly support Martin's claims and reveal the flaws in Defendants' review.

Martin filed her Notice of Appeal on April 10, 2023.  (AR 1351).  Matrix confirmed it had received the entire 368 page appeal.  However, in his assessment of Martin's record, Martin asserts Dr. Glass was not provided records of Dr. Riffle post dating October 21, 2022.  (AR 1632).  Critically, the opinion letter of Dr. Riffle dated March 17, 2022 (though its actual date was March 17, 2023), directly rebuts Dr. Moufawad's IME report from December 1, 2022.

 Likewise, a declaration from Dr. Dornan was also provided by Martin to Matrix but was not included in Dr. Glass's review.   This declaration also directly refutes Dr. Moufawad's conclusions made in his December 1, 2022 report.  According to Martin, it was Dr. Moufawad's report that Matrix heavily relied on in its initial denial of benefits for Martin.

Martin contends neither Dr. Sonnee's nor Dr. Erdos' evaluations appear to have taken into consideration Dr. Riffle's opinion letter or Dr. Dornan's March 23, 2023 declaration.  As a result, Matrix did not consider credible evidence which includes the opinions of Martin's treating physicians.  Martin claims Matrix selectively chose which opinions to consider and which to discount or it failed to provide Martin's treating physician opinions to its own reviewing physicians.

Martin further argues that Defendants failed to provide all the documents in the Administrative Record, including their internal notes, to Martin during the administrative process.  In addition, the medical review of case manager Nurse Phillips contained an important part of the denial but was not provided to Martin.

Ultimately, the Plan Administrator did not properly consider Martin's treating physicians'

opinions but instead treated this evidence in a dismissive manner. While subjective complaints themselves cannot form the basis for finding a disability, they do provide the rationale for objective testing and treatment. While Martin's disability cannot be proven solely by objective testing, the record includes her own log of migraines and her subsequent treatments that support the debilitating effect they had on her. Moreover, the record demonstrates that Martin suffered from near-daily migraines that caused her to suffer cognitive impairment, light sensitivity and brain fog. Mentally, she suffered from persistent fatigue, impaired focus and short-term memory issues. Along with reduced stamina, these symptoms lead her treating physicians to conclude she could not perform the essential tasks of her employment.

As a result, Martin argues Matrix's denial was arbitrary because it failed to provide her a full and fair review and Matrix's medical review failed to accept her supporting medical opinions and disregarded her subjective evidence. Instead, Matrix cherry picked the evidence to consider and included only cursory reviews by the reviewing physicians.

**Defendants' Motion**

According to Defendants, Martin's medical records show she worked for nearly four months despite suffering from her allegedly debilitating migraine headaches. In fact, her symptoms significantly improved prior to her stopping work on April 13, 2022. Both her treating physician and her own attorney admitted to these facts in her administrative appeal.

As the Plan Administrator, Matrix has complete authority under the Plan to make disability determinations for Plan participants. On April 13, 2022, Matrix determined Martin was not eligible for Long Term Disability benefits (LTD) because she was not "Totally Disabled" under the terms of the Plan.

5

According to Matrix, its evaluation was not conducted in bad faith nor was it arbitrary but instead was based on the independent review of not less than four clinical specialists.

In contrast, Martin had not relied on any objective medical evidence but instead, argues on the basis of her own subjective evidence, largely concerning her headaches which she admits have significantly improved.  The Administrative Record of over 1750 pages is devoid of any objective medical evidence of Martin's condition worsening prior to her last day of work.  As a result, her denial was not arbitrary.

On February 1, 2023, Matrix denied Martin's claim for LTD benefits in a four page letter outlining its review of her medical records from twelve treating providers.  Matrix further elected to have Martin undergo an Independent Medical Exam ("IME") with Dr. Sami E. Moufawad. Dr. Moufawad went through Martin's medical records and conducted an examination of Martin. Dr. Moufawad concluded that Martin was not incapable of working as of April 13, 2022.  Dr. Moufawad opined that Martin's migraines were significantly improved just nine days after she reported she was totally disabled.  This is evidenced from the records of her treating neurologist, Dr. Bucklan, who noted that her migraine frequency had improved from sixteen a month to two after Martin received Botox treatment.  He further noted her fatigue had improved and the severity of the migraines had also improved.  He further opined that Martin had demonstrated an ability to work despite her long haul COVID and other co-morbid conditions.  (AR 1192).  Dr. Moufawad noted that Martin's pulmonary function test demonstrated normal function and both her physical and speech therapists' plans did not reveal any worsening of her symptoms.  He further noted that although she claimed to be unable to work, Martin was still able to care for her children, herself and her family and she was still able to drive.  (AR 1194).  He opined that her

6

purported disability was inconsistent with her ability to engage in other aspects of her life and daily activities.  Ultimately, he opined that she was not disabled as her "symptoms lack severity" and there was no change in the treatment plan as of April 13, 2022 or additional referrals to "address a worsening in self-reported symptoms."  (AR 118).

Martin appealed the denial of her LTD benefits on April 10, 2023.  According to Martin, Matrix's denial was based on certain false assumptions.  These include alleged medical record uncertainty regarding the onset of her symptoms, Martin's failure to show an increase in migraines and her failure to show a worsening of her COVID symptoms.  (AR 1351).  Martin's counsel admitted she had not suffered from worsening symptoms but had in fact experienced some improvement.  (AR 1355).

Despite this acknowledgment, Matrix reviewed the medical evidence and determined there was nothing definitive in the information that demonstrated a change in functional status which took place as of April 13, 2022.  (AR 128).  Matrix then sent Martin's case to three board-certified independent physicians for review.  These three physicians, neurologist Jon Glass, M.D., psychiatrist Brandon Erdos, M.D. and internal medicine and pulmonary disease physician, Leonard Sonne M.D., whom all concluded Martin had work capacity on a full time basis as of April 13, 2022.  On May 25, 2023, Matrix denied Martin's appeal in a ten page letter.  Matrix explained that Martin was not Totally Disabled under the Plan because she was capable of performing the material duties of her job.  Moreover, they determined that although Martin complained of worsening symptoms as of December 2021, she continued to work full time until April 12, 2022, thus demonstrating she could perform the duties of her job.

Matrix argues that the decision to deny Martin LTD benefits was not arbitrary or in bad

7

faith, but was instead based on substantial evidence.  That evidence included Martin's ability to work fulltime until April 12, 2022, even though her primary care physician noted that her symptoms began in January 1, 2022, shortly after she became infected with COVID-19.  Thus, the evidence demonstrates she could work despite the symptoms she now claims warrant LTD benefits.

According to Defendants, Martin's April 15, 2022 office visit with her doctor was largely unremarkable as was her April 12, 2022 speech therapy session, both of which failed to indicate any sign of Long Term Disability.  In spite of her complaints of severe migraines, fatigue and light sensitivity, the treatment plan merely consisted of including nutritional supplements.   Such remedies, according to Defendants, do not indicate severe debilitating condition.

Indeed, the record shows that subsequent to these unremarkable results, her condition improved prior to her stopping work.  Martin reported a decrease in her monthly migraines from sixteen a month to two after receiving Botox treatment.  Since she could work despite sixteen migraines a month, it is logical to conclude she could work with two a month.  Dr.  Bucklan remarked that Martin received "significant" benefits and her quality of life had improved.  (AR 152).

Lastly, the three reviewing physicians were unanimous in their opinions that Martin was not totally disabled.  Dr. Erdos opined that all Martin's mental status indicators were within normal limits.  (AR 1676).  Also, Plaintiff's own treating physician informed Matrix that Martin's depression and anxiety diagnosis were not the reason for the total disability claim.  (AR 172).

Dr. Glass opined that Martin showed no deterioration of her condition after April 13,

8

2022. (AR. 1636). Dr. Glass further opined that Martin's prognosis was good considering that she had not exhausted the drug options available for treating migraines. (AR 1637).

Lastly Dr. Sonne opined that there was no objective documentation supporting Martin's claim of total disability. After completing a physical capabilities assessment, Dr. Sonne opined Martin was fit for sedentary and light-duty work which was consistent with her job at the Federal Reserve. (Ar 1667, 1670-71). The only evidence of migraine pain is Martin's own subjective reporting. Thus, Defendants had ample evidence from which to conclude Martin was not Totally Disabled.

## **LAW AND ANALYSIS**

### **Standard of Review**

Typically, employee insurance plans are governed by ERISA. However, ERISA does not apply to "governmental plan[s]," See 29 U.S.C. § 1003(b)(1). These governmental plans "include employee plans established or maintained by the U.S. government or by its "agency or instrumentality." *Id* at § 1002(32). Here, the parties agree that the Federal Reserve's Plan is exempt from ERISA because the Federal Reserve is a fiscal agent of the United States. See *O'Kelly,* 2023 WL 4045223, at *3, (assuming the Federal Reserve Plan is exempt from ERISA). See also *Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.,* 742 F.3d 37, 40 (2d Cir. 2014) (describing federal reserve banks as federal instrumentalities); 12 U.S.C. § 391 (designating federal reserve banks as "fiscal agents of the United States").

Because ERISA does not apply, the Court must look to the governing state contract-law principles to determine the relevant standard of review. See *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112–13 (1989). Here, the Plan contains a choice of law provision naming

New York law as governing interpretations of its provisions.  See Section 13.11 of the Plan.

("The Plan shall be construed, regulated, and administered under the laws of the United States or

the State of New York, as applicable, without regard to New York's principles regarding conflicts

of law.").  In *O'Kelly,* the Sixth Circuit held that New York law governed the Court's analysis of

the Plan based on the choice of law provision.  Because the same Plan is before the Court in this

action, the Court finds the Sixth Circuit's decision compels the same result and therefore, the

Court will apply New York law.

Under New York law, courts must enforce written agreements that are "complete, clear

and unambiguous on [their] face" according to the plain meaning of their terms.  *Greenfield v.

Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).  In analyzing New York law, the Sixth

Circuit in *O'Kelly* held that "when a plan vests sole authority in the designated decision-maker,

an employer's decision to deny 'non-ERISA benefits may be set aside only where it is made in

bad faith, was arbitrary or was the result of fraud.'"  *O'Kelly,* 2023 WL 4045223, at *3 *quoting

Welland v. Citigroup, Inc.,* No. 00-Civ-738, 2003 WL 22973574, at *11 (S.D.N.Y. Dec. 17,

2003), aff'd, 116 F. App'x 321 (2d Cir. 2004).   "If a reasonable basis supports the decision, we

may not 'substitute [our] judgment for that of [the employer] on the disputed factual issues.'"  *Id.*

(quoting *Gehrhardt v. Gen. Motors Corp.,* 581 F.3d 7, 12 (2d Cir. 1978)).

Where a Plan delegates decision making authority to a third party adminstrator as does

the Plan before this Court, the Sixth Circuit held and this Court agrees, that New York law

requires us to determine whether Matrix's decision was a "valid exercise of its decision-making

authority."  *O'Kelly* at *4 citing *Greenfield*, 780 N.E.2d at 170.   The Sixth Circuit concluded

that its review of the Plan must determine whether Matrix's decision was  "made in bad faith,

was arbitrary or was the result of fraud." *Id.* citing *Welland,* 2003 WL 22973574, at *11.

"Under New York law, an employer's decision regarding non-ERISA benefits may be set aside only where it is made in bad faith, was arbitrary or was the result of fraud." *Welland,* 2003 WL 22973574, at *11 citing *Gehrhardt,* 581 F.2d at 11. "If the decision is supported by a reasonable basis, '(t)he court may not substitute its judgment for that of [the employer] on the disputed factual issues.' " *Id.* at 12. The interpretation of such contracts are "matters properly treated as questions of law and are reviewable by this court." *Welland* at *11. "The Committee's decision is reviewed on the basis of information that was available to the decision-maker when the decision was made." *Id.*

The Second Circuit Court of Appeals affirmed the conclusions of the district court in *Welland*. "As to Welland's second argument, we find that the district court properly reviewed the decision to forfeit Welland's stock options under an arbitrary and capricious standard, especially in light of the full authority given to the Compensation Committee under the terms of the governing agreements and incentive plans." *Welland ,* 116 F. App'x at 322.

As this Court has already held, the Sixth Circuit's analysis of New York law in relation to the Plan dictates that the parties' arguments must be based on the evidence found in the Administrative Record. This conclusion is mandated in cases such as this where the Plan confers upon a third party administrator such as Matrix full authority to interpret and administer the Plan, including full authority to make eligibility determinations. See *Firestone Tire & Rubber Co.,* 489 U.S. at 112–13, ("the trust law de novo standard of review is consistent with the judicial interpretation of employee benefit plans prior to the enactment of ERISA. Actions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of

11

contract law. If the plan did not give the employer or administrator discretionary or final authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim— by looking to the terms of the plan and other manifestations of the parties' intent.) *See also Krolnik v. Prudential Ins. Co. of Am.,* 570 F.3d 841, 842 (7th Cir. 2009) ("Unless a welfare-benefit plan confers interpretive or operational discretion on its administrator or insurer, the judiciary makes an independent decision about benefits.").

Section 8.1 of the Plan entitled Administration of the Plan reads:

Plan Administration. Except as otherwise provided in the Plan or the By-Laws, the Plan Administrator or its delegate shall have full responsibility for the administration and interpretation of the Plan and shall have such authority as is necessary or appropriate in carrying out its responsibilities.

Section 8.2 of the Plan reads in pertinent part:

Plan Interpretation. Except for those powers specifically delegated to the Medical Board under Section 8.3 of the Plan, the Plan Administrator or its delegate shall have the final authority and discretion to interpret the Plan and to determine any question arising under or in connection with the administration of the Plan, including without limitation, determining eligibility to participate in the Plan. Its decision or action in respect thereof shall be conclusive and binding upon all persons having an interest in or under the Plan, or under any agreement, if any, with an insurance company or other financial institution constituting part of the Plan.

The Plan's stated purpose is "to provide long term disability benefits for eligible Employees of the Federal Reserve System who are unable to work due to a mental or physical disease or bodily injury, and to assist those Employees, whenever appropriate, to return to work." (AR 1693). According to the Plan, a participant must by "Totally Disabled" to be eligible for Long Term Disability benefits. (AR 1703).

The Plan defines "Totally Disabled" or "Total Disability" as follows:

12

(a) during the Own Occupation Period the Participant or LTD Payee is unable

solely because of illness or injury to work on a regular and full time basis (as

defined below) at his own job or Another Job in his Own Occupation, and

(b) during the Any Occupation Period, a Participant or LTD Payee is unable,

solely because of illness or injury to work at Any Occupation.

The Plan defines "Proof" as

"Written documentation that evidences and supports a claim for benefits
and includes, but is not limited to, a claim form completed and signed by the
Participant; an attending Physician's statement which includes, among other
things, standard diagnosis and a description of Appropriate Available Treatment
for the disabling condition; hospital records, the attending Physician's office
records or notes, the consulting Physician reports, lab findings, test results, x-rays
and any other form of objective medical evidence in support of a claim for
benefits. Proof must be provided at the Participant's expense unless otherwise
provided in the Plan.

(AR 117).

The Plan authorizes the appointment of a claim administrator to make all determinations

of Total Disability under the Plan. (AR 1713). The Plan provides that The Committee on Plan

Administration shall appoint a Medical Board to act as a claims administrator that may either be:

(i) a third party administrator [in this case, Matrix], or (ii) one or more Physicians. The Medical

Board has the authority to make all determinations of Total Disability on account of which

claims are made by Participants for LTD Benefits under the Plan, and shall have such other

duties and exercise such other powers as are provided in the Plan or the By-laws. The Plan

expressly states that "All determinations of Total Disability are made by the Medical Board in its

sole discretion." (AR 1703). The Medical Board also has the "sole discretion" to "have a

Physician of its choice examine any Participant and any LTD Payee who has applied for benefits

13

under the Plan. Multiple exams, evaluations and functional capacity exams may be required by the Medical Board during the Period of Total Disability." (AR 1709).

**The Medical Evidence**

According to Martin, the medical evidence before Matrix revealed that she suffered continuous, medically disabling limitations that included severe migraines, cognitive impairment and fatigue.   Even though she may have experienced limited improvement, the conditions were still severe enough to be functionally limiting.  One of Martin's treating physician's, Dr.  Reed, authored an opinion in which she described Martin's severe migraines (AR 962), as having a debilitating effect on her ability to carry out daily activities, including laundry and giving her child a bath.  She further noted that Martin cannot perform the duties of her job as a result of her migraine symptoms.  (Id).  Dr. Riffle wrote an opinion letter dated March 17, 2022 (likely 2023 as it references Dr. Moufawad's opinion of December 1, 2022).  In it he directly contests Dr. Moufawad's conclusion that Martin was not disabled, arguing that he personally observed Martin's difficulties with daily tasks, including child care.  (AR 1394).  Dr. Dornan also issued a declaration stating that Martin's symptoms were worsened by exposure to computer screens.  He further declared that Martin's migraines were aggravated by the blue light from computer screens and tension from sitting for prolonged periods of time.  Acknowledging that Martin's migraine symptoms have improved,  Dr. Dornan emphasized that it does not mean they were eliminated and that her baseline symptoms impair her ability to work fulltime.  (AR 1396).

In their initial denial letter, Matrix reviewed the medical records of Martin's treating medical care providers Sandra Cooper, CNP, Dr. Young, Dr. Bucklan, Danielle Summers, P.A., Dr. Shlonsky, Dr. Hasting, Dr. Kurtis Dornon, Dr. A Sullivan, Dr. Reed, Dr. Morgan, Dr. April

14

Kalan, and Dr. April Sobieralski.  (AR 117).  After discussing her medical records Matrix

discussed Dr. Moufawad's assessment of Martin after conducting an IME with her.  The review

of her medical records and Dr. Moufawad's assessment provided the basis for denying her LTD

benefits as they concluded Martin: 1) had " previously demonstrated the ability to work with your

long-haul COVID-19 condition, associated symptoms, migraines and other co-morbid

conditions:"  (Id.) 2) Martin's symptoms, including migraines, "were improving with Botox

injections and you were able to work with migraines previously:" 3) her mental health issues,

including depression and anxiety, "were not to be used for the claim:" and 4) Matrix concluded

"[g]iven there has been no change in the treatment plan as of April 13, 2022, or evidence of any

referrals for any further speech, cognitive or physical therapy, or referral for a specialty

long-hauler evaluation to address a worsening in self-reported symptoms, symptoms lack severity

and does not support that you are functionally impaired to exclude from working your own

occupation."  (Id).

Dr. Moufawad's assessment comprehensively considered Martin's medical records and

found that her symptoms were improved, though not completely resolved.  This assessment was

based largely on the assessments of Martin by her own treating physicians and was not the sole

conclusion of Dr. Moufawad based on the IME alone.  (AR 1191-92).

Based on the above facts, the Court holds that Matrix's decision was not arbitrary, in bad

faith or based on fraud, as there was a reasonable basis for its decision.  See *O'Kelly v. Fed. Rsrv.*

*Bank of Cleveland,* No. 22-3774, 2023 WL 4045223, at *3 (6th Cir. June 16, 2023) quoting

*Welland v. Citigroup, Inc.,* No. 00-Civ-738, 2003 WL 22973574, at *11 (S.D.N.Y. Dec. 17,

2003), aff'd, 116 F. App'x 321 (2d Cir. 2004).  ("If a reasonable basis supports the decision, we

may not 'substitute [our] judgment for that of [the employer] on the disputed factual issues.'"). Thus, it is not for this Court to "find for ourselves whether {Martin} was totally disabled under the plan, but to check if a reasonable basis supported Matrix's finding." *O'Kelly*, 2023 WL 4045223, at *4.

The Court finds Matrix's decision was not arbitrary as it was based not only upon a complete review of the medical record and an independent IME, but also relied heavily on Martin's own physician's assessments that her symptoms were improving.  The decision to deny plan benefits is not arbitrary if it is "the result of a deliberate, principled reasoning process and ... supported by substantial evidence." Id.  quoting *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan,* 27 F.4th 405, 411 (6th Cir. 2022).

Moreover, on appeal, Matrix relied first on its own logical assessment that Martin actually did work for nearly four months after her symptoms manifested:

> However, please know that we are aware that your client reported their present symptoms began shortly after their December 2021 COVID-19 infection, and not only as of April 13, 2022. It is simply the case that, to be Totally Disabled, under the Plan, your client had to be incapable of performing the material duties of their own occupation/another job within their own occupation.  As such, the question at the heart of the Claims Operations Team's adjudication, and our current appeal review, was if your client was so impaired as of the date they stopped working for The Federal Reserve System on a full-time, consistent basis, as to potentially warrant LTD benefits. This happens to be April 13, 2022, and not at/around the time of the December 2021 COVID-19 infection. Your client's working through and until April 13, 2022, demonstrated, in and of itself, that they were fully capable of doing so, and not Totally Disabled by definition. The presence of symptoms, or the making of a formal diagnosis, on their own does/do not equate to a functional work impairment. An injury or illness must actually preclude your client from performing those material duties on a regular and full-time basis to be deemed, by any manner, a Total Disability.

(AR 128).

16

Despite this conclusion, Matrix obtained the medical opinions of three reviewing physicians to review Martin's records and the materials submitted on appeal.  (AR 129).   In denying Martin's appeal (AR 123-129), psychiatrist Brandon Erdos, M.D., determined all of Martin's mental status exam results were "unremarkable and within normal limits."  (AR 129). Neurologist Jon Glass, M.D.,  determined as of April 13, 2022, that Martin could lift twenty pounds occasionally and ten pounds frequently, could reach above her chest and down to her waist "constantly."  He concluded the same on her dexterity and ability to grasp.  Moreover, he concluded she could walk, drive and climb occasionally, could stand, bend at the waist, squat at the knees, climb stairs, kneel and crawl frequently and sit and use foot controls "continuously." (Id at 129-30).

Lastly, Internist Leonard Sonne, M.D. wrote, "She is perfectly capable of using all four extremities.  She walks.  She is able to drive.  She is able to attend multiple provider office visits and give a detailed medical history.  There is no support for any physical limitations on the Physical Capabilities Form.  The patient has no restriction, limitation or  impairment at all. Again, she had been doing a sedentary occupation."  (Id at 130).

In light of all of the above, the Court holds that Matrix did not act arbitrarily, in bad faith or with fraud.  Instead, its analysis was comprehensive, relied heavily on the undisputed fact that Martin did in fact work while her symptoms were at their worst for nearly four months, and were improving after she stopped working.  Moreover, four physicians, upon review of her medical records and, in the case of Dr. Moufawad, an IME, all found no objective proof she was Totally Disabled under the terms of the Plan.

Martin argues that Defendants did not give sufficient credence to her treating physicians.

17

However, case law is clear that courts are not to give treating physician opinions special treatment.  "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.  But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).  The evidence on the Administrative Record demonstrates that Defendants' reviewing physicians did consider the opinions of Martin's treating physicians.  In fact, they relied on their assessments in concluding that her symptoms were improving in reaching their conclusions.  Moreover, the Plan requires "proof" of total disability and while Martin argues her subjective evidence supports her disability claim, the Plan requires total disability claims to be supported with objective medical proof which Defendants' reviewing physicians found did not support such claim.

**<u>Failure to Consider Records Provided on Appeal</u>**

According to Martin, Defendants failed to provide her with the file review of Renee Phillips, RN, BSN of January 25, 2023.  According to Martin, this failure deprived her of the ability to properly review the initial denial and prepare an adequate appeal.

Defendants argue that Martin has failed to provide any evidence that this one page review was not received by her counsel.  In addition, Defendants contend that because this case is not governed by ERISA and the Plan's review procedures are purely voluntary, consequently they are not compelled by any statute and therefore do not require remand.

Although this matter is not governed by ERISA, it is useful and instructive as a guide as the arbitrary standard of review applies here as well. In ERISA cases, when a party challenges whether a defendant has complied with its obligations to provide everything required by the statute, the Sixth Circuit applies a substantial compliance test. See *Houston v. Unum Life Ins. Co. of Am.*, 246 F. App'x 293, 300 (6th Cir. 2007). Here, Martin fails to describe how the exclusion of Phillips' case summary impacted her ability to appeal the denial of LTD benefits. The denial was based on the medical evidence provided and reviewed by Matrix and Dr. Moufawad and there is no reference to any opinion of Phillips that was relied on in reaching the decision to deny Martin long term benefits. In short, Phillips' case summary did not provide any basis for the LTD determination, nor did it provide any medical information that was not already provided for in the Administrative Record. Assuming for purposes of argument that Phillips' case summary was not provided to Martin, there is no evidence it played any role in the decision to deny Martin benefits and did not provide any new or previously undisclosed medical information. Thus, it worked no prejudice to Martin and does not provide a basis for remand. Moreover, Defendants provided Martin with substantial and complete denial letters discussing at length the evidence considered and the rationale for its decisions both on the initial review and on appeal. Consequently, the Court finds Defendants substantially complied with their obligations and remand is not warranted.

Finally, Martin alleges the Administrative Record does not indicate whether Defendants' reviewing physicians on appeal considered the March 23, 2023 declaration of Dr. Dornan or the opinion letter of Dr. Riffle.

Defendants respond that there is no reason to believe that these records were not

considered by the reviewing physicians even though they did not expressly refer to them in their evaluations.  Moreover, neither Dr. Dornan's declaration nor Dr. Riffle's letter cite any new medical evidence nor diagnosis but instead, merely reemphasize the information found in their prior medical evaluations.  Those prior opinions and medical records were expressly considered by Dr. Glass in his evaluation and Dr. Erdos in his psychiatric evaluation.  More importantly, both reinforce the medical evidence that Martin's symptoms were improving.  Thus, Martin cannot show these opinions were ignored.  At best, Defendants contend they are merely harmless error and would have made no difference in Defendants' conclusions that Martin was not totally disabled.  However, Dr. Sonnee does expressly reference the letter in his evaluation (AR 1665).  And there would have been no reason for Dr. Erdos to review Dr. Riffle's letter since Dr. Erdos is a psychiatrist retained to review Martin's psychological treatment and medical condition which would not be impacted by Dr. Riffle's chiropractic treatment.

Defendants specifically stated in the their denial of Martin's benefits on appeal that they considered all documents provided by Martin on appeal.  (AR 129).  Thus, the Court finds there is no compelling evidence supporting Martin's assertion that these documents were not considered by Defendants.  However, even assuming they were not considered, it would be mere harmless error as the declaration and letter present no new evidence but merely reassert their conclusions and would not require remand as Defendants considered Dr. Dornan and Dr. Riffle's prior medical records and evaluations and concluded Martin was not totally disabled.  The declaration and letter would not have provided a basis to alter that conclusion.

Therefore, for the foregoing reasons, the Court denies Martin's Motion on the Administrative Record and grants Defendants' Motion on the Administrative

Record because Defendants' denial of benefits decision was not arbitrary nor made in bad faith

or with fraud.  Instead, it was based on substantial evidence in the medical record.

      IT IS SO ORDERED.


Date: July 9, 2025          /s/Christopher A. Boyko
                                      CHRISTOPHER A. BOYKO
                                      United States District Judge